UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ALBERT SUNIGA,

    Defendant.

_____/

No. 7:24-CR-00008-M-RN-1

SENTENCING MEMORANDUM

NOW COMES the Defendant, Albert Suniga, by and through counsel, Kevin M. Marcilliat, and hereby files this Sentencing Memorandum as to sentencing factors. The Defendant further moves this Court to depart and vary below the applicable advisory guideline range, pursuant to 18 U.S.C. § 3553(a), and *United States v. Booker*, 543 U.S. 220 (2005) and its progeny, and impose a sentence of 240 months in custody of the Bureau of Prisons followed by a 10-year period of supervised release.

## I. Introduction

On September 17, 2024, the Defendant pled guilty to production of child pornography in violation of 18 U.S.C. § 2251(a) (Count Two), pursuant to a written plea agreement. The Presentence Investigation Report (PSR) calculates the Defendant's guideline range as follows:

| | |
|---|---|
| Base Offense Level, § 2G2.1(a): | 32 |
| Under 12 Years Old Enhancement, § 2G2.2(b)(1)(A): | +4 |
| Sexual Act Enhancement, § 2G2.1(b)(2)(A): | +2 |
| Parent/Relative Enhancement, § 2G2.1(b)(5): | +2 |
| Pattern of Activity Enhancement, § 4B1.5(b)(1): | +5 |
| Acceptance of Responsibility, § 3E1.1(a) & (b): | - 3 |
| Total Offense Level: | 42 |
| Criminal History Category (CHC): I | |
| Advisory Guideline Range: | 360 Months in BOP |

1

Each of the specific offense characteristics were the subject of stipulations between the parties in the plea agreement, and each are applicable in this case. Therefore, Defendant does not object to the PSR's calculation of the guideline range.

The Defendant moves this Court to vary below the applicable guideline range and impose a sentence of 240 months in custody followed by a 10-year period of supervised release. The Defendant submits that the requested sentence is sufficient, but not greater than necessary, to achieve the purposes of sentencing as set forth in 18 U.S.C. § 3553(a).

In support of his requested sentence, the Defendant submits the following factors as relevant under 18 U.S.C. § 3353(a); (1) the Defendant's extraordinary acceptance of responsibility, as evidenced by his full confession to both the instant offense and other misconduct which would not have otherwise been discovered; (2) the Defendant's family and community support; (3) the Defendant's vulnerability in prison, as evidenced by the fact that he has been physically attacked multiple times in county jail while awaiting sentencing in this case; (4) the Defendant's history of victimization during his own childhood; (5) the Defendant's consistent employment record and otherwise upstanding life; (6) the need for general and specific deterrence; and (7 the nature and circumstances of the offense.

## II. Overview of Offense Conduct

This case began, like so many similar cases, with a cybertip. PSR ¶ 8. The cybertip pointed to Mr. Suniga's Google Drive account containing CSAM images, leading to search warrants being issued for his associated email account. The search of his email account resulted in the discovery of a file labeled "Maddy" which contained videos and images of the minor victim ("MV"), who appeared to be approximately 10 years old. Once it was confirmed that the MV resided in the same household as Suniga, a residential search warrant was immediately secured and executed on

2

February 15, 2023. PSR ¶ 10. Homeland Security Investigations Agent Addy Penniman led the investigation. Mr. Suniga was extremely cooperative and immediately agreed to engage in a recorded interview with Penniman. As set out in the PSR, when speaking to Agent Penniman, although Suniga initially denied knowledge of what was going on, once confronted with the images of MV from his Google Drive, he immediately admitted and gave a broad ranging confession. He admitted to filming MV for sexual purposes while she was sleeping, and he stated that he did not believe MV was aware of the filming. He later confirmed that he secretly recorded her in the bathroom on two occasions. He confirmed that he was sexually abused as a child and stated that this has been something he has struggled with since he was a kid. He denied ever sharing any of the videos he created, and nothing in the investigation shows otherwise.

During the pre-test interview for the polygraph, he made multiple additional admissions, including that he had inappropriate sexual contact with two younger cousins when he was a juvenile. PSR ¶ 11. Regarding MV, he went on to admit to multiple things that were not apparent from the video recordings and that were not otherwise provable from MV's statements: that he would stand over her and masturbate while she was sleeping, and that he touched her buttocks while doing so. He never touched her vagina. When MV was forensically interviewed, she stated only that Suniga would touch her legs, buttocks, and calves [while she was awake] and she would tell him to stop. Regarding whether she was aware of the filming, she stated that sometimes she sleeps only partially clothed and has been told that he filmed her, but she only remembers one occasion that there was a camera flash while she was sleeping.[1] PSR ¶ 15. She reported that "any other time I was asleep," and otherwise was not aware of any abuse by Suniga.

---

[1] Specifically, after reviewing the recording, MV reported that her biological father was arguably worse than Albert and abused her and her mom mentally and physically. Because of this and her mom being so upset about the prior abuse, MV reported that she initially told her mom about Albert touching her butt, then later recanted because her mom was so upset.

3

Throughout these extensive interviews with law enforcement, Suniga repeatedly expressed his guilt and shame over what he did to MV. Given the limited nature of MV's disclosure and the fact that she confirmed she was asleep during these incidents, the vast majority of the information about the abuse came from the recordings themselves (which do not show physical sexual contact) and directly from Suniga's own statements (where he did admit to touching her for sexual reasons). While being transported to jail by Agent Penniman, Suniga stated on the recording that he knew he had a problem with pornography, but the problem would come and go, and he would feel the same guilt and shame each time. He expressed that this was a coping mechanism for the untreated abuse he experienced as a child. He stated that he knew he needed help, and that, as terrible as it is, he views his arrest as a way of getting help with these unaddressed issues.

**III.     Application of the 18 U.S.C. § 3353(a) Factors Warrant a Downward Variance**

a. History and Characteristics of the Defendant: 18 U.S.C. § 3553(a)(1)

i. *Vulnerability to Abuse in Prison and Age at Release*

Although Mr. Suniga is only 37 years old and in reasonably good health, his relatively small statute (he is 5 foot 7 and has lost over 100 pounds since being incarcerated), status as a sex offender, and first time inmate status (and associated naivete about how to navigate the custodial environment in which he finds himself) make him uniquely susceptible to physical violence from other inmates. This has already proven itself to be a significant concern during his pretrial confinement in the county jail in Robeson County, where he has twice been physically attacked by other inmates, despite being an extraordinarily easy going individual who would never pick a fight with anyone. Most notably, on Sunday February 16, 2025, at approximately 3 AM, Mr. Suniga awoke to three inmates loudly harassing a female corrections officer. Mr. Suniga did not get involved and went to watch T.V., when moments later he was jumped by all three men, being

4

beaten in the head and face repeatedly. Since that time, he has been recovering in a medical cell, where he remained as of the undersigned counsel's phone call with him on 2/18/2025.

Courts have found that vulnerability to abuse in prison is a proper sentencing consideration. *See e.g.*, *United States v. Parish*, 308 F.3d. 1025 (9th Cir. 2002) (approving below guideline sentence in child pornography case based upon the defendant's stature, demeanor, naivety, and the nature of conviction); *Koon v. United States*, 518 U.S. 81 (1996) (approving downward departure based upon defendant/police officer's susceptibility to abuse in prison).

Additionally, even if Mr. Suniga is given the requested downward variance to a 20-year sentence, he will be in his mid to upper 50's at the time of release, an age range that results in a significant drop in recidivism rates. *See* U.S. Sentencing Commission, *The Effects of Aging on Recidivism among Federal Offenders*[2] (noting that recidivism decreases with each increase in age group at release, and noting that offenders in the 55 to 59 age group at release had a re-offense rate of only 22 percent, as opposed to over 60 percent for younger offenders).

ii .    *Otherwise Exemplary Life, Employment History, & Support System*

Apart from the conduct that brings the Defendant before the Court, the Defendant has led a law-abiding, productive life. The Defendant has no criminal history points and 11 years of consistent employment history in the tech support/ information technology (IT) field. Mr. Suniga graduated from high school and, although he did not complete college, he did attend some college courses and obtained significant training in various computer-related systems and technology. See PSR ¶ 41.

In addition to his work history and lack of criminal history, the Defendant's character can be understood by reference to the letters submitted on his behalf to the Court from family and

---

[2] Available at https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders (last accessed February 18, 2025).

friends.  *See* **Exhibit A**, *Character Reference Letters*.  These letters consistently describe Mr. Suniga as a caring, generous person who would do anything for his family members or those in need.  His mother, Josphine Valenzuela, talks about how it was Albert who gave her the courage to leave an abusive relationship, and who loaned his uncle money when he needed it.  His aunt, Mary Salazar, shares a story about how Albert built her a new computer for free when he discovered that hers was broken.  Sadly, the letters also uniformly highlight how Mr. Suniga was completely broken by his divorce to his ex-wife, who aborted Albert's child without his permission and then bore another man's child while they were still married.  *See also* PSR ¶ 36.  This separation and divorce occurred in 2020-2021, immediately preceding Mr. Suniga's relocation to North Carolina when he was starting a new relationship with the mother of MV.

    The Defendant respectfully requests that the Court take into consideration the Defendant's positive impact on his family and community, as well as his lack of criminal history and consistent work history, in imposing sentence.  Although the Defendant will be middle aged upon release from BOP, there is every reason to believe that if given a reasonable sentence, upon release, the Defendant will again be able to use his employable skills and compassion to positively affect his family and others.

    b.  <u>Seriousness and Circumstances of the Offense: 18 U.S.C. §§ 3553(a)(1) and (a)(2)(A)</u>

Mr. Suniga concedes that his offense conduct was extremely serious, both regarding his conduct against MV as well as the other victims whose images he possessed on his devices.  His offense is made more serious by the fact that he created videos on more than one occasion, by the fact that he did engage in (albeit limited) physical sexual contact with the victim while she was sleeping by touching her on the buttocks area, and by the fact that he captured naked images of MV without her knowledge or consent.  Further complicating this case is his own admission to

6

physical sexual contact with two cousins when all involved were juveniles which, although not relevant conduct, is relevant regarding his history and characteristics, along with his candid admission to having a sexual interest in children. Based on all the above, Mr. Suniga concedes that a custodial sentence above the statutory minimum of 15 years is appropriate.

    c. <u>Need for Specific and General Deterrence: 18 U.S.C. § 3553(a)(2)(B) & (C)</u>

The Defendant is a true first offender, with zero criminal history points. PSR, ¶ 26. Based on empirical data, the Sentencing Commission has noted that the "zero [criminal history] point offender recidivism rate is substantially lower than the recidivism rate for offenders with only one criminal history point (22.6%), or for offenders with two or more points (36.5%). U.S. Sentencing Comm'n, *Recidivism and the "First Offender*," at 13 (May 2004). The Commission has further found that "the overwhelming majority of [offenders whose only prior convictions are minor traffic or public order crimes]—almost nine out of ten—are not likely to recidivate." *Id*. at 17. More recently, the Commission found that "a federal offender's criminal history is closely correlated with recidivism rates," and that offenders like the Defendant, with zero criminal history points, are the least likely to reoffend. *See* U.S. Sentencing Comm'n, *Recidivism Among Federal Offenders: A Comprehensive Overview*, at 5 (March 2016). Consistent with the Commission's findings, courts have recognized that, generally, a lesser prison term is sufficient to deter one who not been subject to prior incarceration. *See e.g.*, *United States v. Baker*, 445 F.3d. 987 (7th Cir. 2006) (affirming downward variance of 30 months based on district court's finding that a prison term would mean more to the defendant than others who had previously been imprisoned, and noting that this was a proper consideration under both § 3553(a)(2)(A) (just punishment) and § 3553(a)(2)(B) (deterrence)).

## IV. Conclusion and BOP Placement Request

For the reasons stated above, the Defendant respectfully requests that this Court impose a sentence of 240 months in BOP custody, followed by 10 years of supervised release.

The Defendant further requests that this Court recommend that the Defendant be placed at FCI Seagoville, Texas, in order to allow the Defendant as much contact with family members as possible.

This the 18th day of February, 2025.

Respectfully Submitted,

/s/ Kevin M. Marcilliat
_____
Kevin M. Marcilliat
N.C. State Bar No. 44592
Marcilliat & Mills, PLLC
272 N. Front Street Suite 330
Wilmington, NC 28401
Telephone: (919) 838-6643
Facsimile: (919) 573-0774
E-mail: Kevin@RobertsLawTeam.com
*Retained Counsel for Defendant*

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date shown below, he electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

>United States Attorney's Office
>Attn: Charity L. Wilson
>150 Fayetteville Street Suite 2100
>Raleigh NC 27601
>919-856-4530
>Charity.wilson@usdoj.gov

This the 18th day of February, 2025.

Respectfully Submitted,

/s/ Kevin M. Marcilliat
_____
Kevin M. Marcilliat
N.C. State Bar No. 44592
Marcilliat & Mills, PLLC
272 N. Front Street Suite 330
Wilmington, NC 28401
Telephone: (919) 838-6643
Facsimile: (919) 573-0774
E-mail: Kevin@RobertsLawTeam.com
*Retained Counsel for Defendant*

9